**Alexander Hess v. Elisha Webb.**

55   53
110   106

1. MALICIOUS PROSECUTION—*Probable Cause to Justify an Arrest.*— Probable cause to justify an arrest, must be something more than such mere conduct on the part of the person charged with the offense, as may induce the inference that the prosecution was undertaken from public motives.

2. MALICIOUS PROSECUTION—*Probable Cause Defined.*—To constitute probable cause as a defense in actions for malicious prosecution there must be a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the person accused is guilty.

3. A mere quibble on language used by a witness can not be made the basis upon which to predicate perjury in order to gratify a spirit of revenge.

Memorandum.—Malicious prosecution. Appeal from the Circuit Court of Johnson County; the Hon. ALONZO K. VICKERS, Judge, presiding. Declaration in case; plea, not guilty; trial by jury; verdict and judgment for defendant; plaintiff appeals. Heard in this court at the August term, 1893. Reversed and remanded. Opinion filed March 23, 1894.

The opinion states the case.

SPANN & SHERIDAN, attorneys for appellant.

MORRIS & MOORE and WHITNEL & GILLESPIE, attorneys for appellee.

MR. PRESIDING JUSTICE SAMPLE DELIVERED THE OPINION OF THE COURT.

Appellee was arrested by appellant, the village constable of Vienna, for being drunk, and was fined on that charge alone. He got very angry at the constable for arresting him, and right after the trial made threats that he would see him again, or would get even with him. In two days thereafter he had the constable arrested at night, when he could not readily give bail, and had him incarcerated in jail on a charge of perjury claimed to have been committed at said trial, for swearing appellee, on the day he was drunk, had a gun or displayed a gun. The appellant was acquitted, and this action was brought for malicious prosecution, and on trial before a jury a verdict was returned for the appellee, which was sustained by the court.

Appellee testified that he swore out the warrant because Hess swore falsely about the gun:

"He said I was drunk and swore that I said no man could arrest me when I had my gun in my hand."

Q. Where was your gun at this time? A. It was at the grain house at the railroad.

The time and place alluded to was in the evening at a public well in the village of Vienna where appellee had driven his horses to water them. His nephew, W. R. Webb, was in the wagon with him, and he says a gun was in the bottom of the wagon.

Q. Do you know where Webb's gun was? A. Yes, sir, I heard afterward that they found it at the depot.

He denies that his uncle used the language Hess attributed to him. He was asked:

Q. Did you drink any that day? A. Yes, sir, we drank along the road till we got to Vienna, and it threw us off our balance. We started from home with two guns and came back with one, the other we got down to the depot.

He says if the one that was in the wagon when they were at the well was visible, he did not see it. This man was evidently drunk as well as his uncle, the appellee. In fact he also was fined.

He alone corroborated the appellee as to what occurred at the well. No less than eight citizens of Vienna swear the gun was visible in the wagon at the well; some of them swear that they saw appellee handle it. Their evidence so sharply bears the impress of truth, that the jury could not have disbelieved them. The verdict must be explained on some other ground. The appellee evidently based the charge of perjury on the alleged statement of Hess, that he, appellee, had *his* gun in his hands, or in the language of Webb, that " I had my gun in my hands," for he says that *his* gun at the time was at the grain house at the railroad. This was the quibble upon which an officer, seeking to protect the public of Vienna from a possible or probable danger of a drunken man, having and using a gun, was arrested for perjury, and by which, in swearing out the warrant for the arrest, the appellee sought to satisfy his conscience. In fact, it seems, if his nephew told the truth, that he did not know where his gun was. It was found afterward at the depot. Then it was not at the grain house.

In view of the conversation of these men at the time they were at the well, although they probably had sobered up some, we think instruction seventeen asked by appellant and refused by the court should have been given. It told the jury, in effect, that if they believed from the evidence the men were intoxicated at the time of the event about which they testified, then they might take this fact into consideration in weighing their evidence. The instruction does not, as assumed by appellee's counsel, refer to the mere fact of a man having taken a drink of liquor being a proper matter to take into consideration in weighing such witness' evidence, but to his condition of intoxication at the time of the events about which he testifies.

This case, it is thought, illustrates the effect of such condition. The specific charge in the complaint upon which the appellant was caused to be arrested, was that "Alex. Hess willfully and maliciously swore to a lie against him, the said Elisha Webb, concerning the display of deadly weapons," meaning as above shown, that Hess swore appellee had *his* gun, when in fact, as he claims, *his* gun was at the grain office. This quibble was made the flimsy pretext upon which to base the complaint and have the appellant disgraced by an arrest and incarceration in jail. The appellee took no counsel to determine whether he would be justified in causing appellant's arrest upon such ground. His charge was baseless, and it was inspired by a spirit of revenge. He was determined to get even. The law can not be used for such a purpose. The charge of perjury was informal, yet if the complaint charged any criminal offense, it was perjury. The declaration, by alleging that appellee caused the appellant to be arrested on the charge of perjury, did not affirm that the charge was formal or that it was sufficient. It merely gave a name to the alleged offense stated in the complaint. The introduction of the complaint in evidence in this case showed that was the charge, and hence it was not an issuable question, whether the charge was formal or sufficient.

The gravamen of the declaration was the malicious

arrest without probable cause. The second instruction given for the defendant, which raised the question as to the sufficiency of the complaint to constitute perjury, was erroneous.

The sixth instruction for defendant should not have been given. Probable cause justifying an arrest must be more than mere " conduct on the part of the person charged with the offense, as may induce the inference that the prosecution was undertaken from public motives." It is properly defined in the seventh instruction, which told the jury there must be a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the person accused is guilty. The ninth instruction is subject to criticism, as not being sufficiently specific in view of the facts in this case.

This case on the merits should be submitted to another jury. The judgment is reversed and the cause remanded.